**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| Mark Johnson,<br><br>Plaintiff,<br><br>v.<br><br>TransUnion LLC, Experian Information Solutions, Inc., Equifax Information Services LLC, First Financial Bank, and Mariner Finance, LLC,<br><br>Defendants. | Civil Action No: 1:25-cv-01745<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer

reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flows from inaccurate reporting.

7. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8. Mark Johnson ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants TransUnion LLC ("TU"), Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), First Financial Bank ("FFB"), and Mariner Finance, LLC ("Mariner") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information and Defendants' failure to reasonably investigate/reinvestigate the same.

9. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10. Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681 *et seq*.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

15. Plaintiff resides in this District.

## PARTIES

16. Plaintiff is an adult individual and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

17. Defendant TU is a business entity doing business in the Southern District of Indiana.

18. Defendant TU's registered agent address is: Corporation Services Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

19. Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

20. Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21. Defendant Experian is a business entity doing business in the Southern District of Indiana.

22. Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

23. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

24. Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25. Defendant Equifax is a business entity doing business in the Southern District of Indiana.

26. Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

27. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

28. Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

29. Defendant FFB is a business entity doing business in the Southern District of Indiana.

30. Defendant FFB's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

31. Defendant FFB is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

32. Defendant Mariner is a business entity doing business in the Southern District of Indiana.

33. Defendant Mariner's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

34. Defendant Mariner is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

35. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

36. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

37. Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

**FACTUAL ALLEGATIONS**

38. Plaintiff owns an automobile that was financed by a secured loan on or about November 29, 2022 (the "Mariner Loan").

39. Plaintiff owns a second automobile that was financed by a secured loan on or about July 26, 2022 (the "FFB Loan").

40. On or about May 19, 2023, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiff's case was assigned Case Number 23-02148-JMC-13 (the "Bankruptcy").

41. On or about March 8, 2024, Plaintiff's Chapter 13 plan was confirmed.

42. The holder of the Mariner Loan, Mariner, was listed in the Chapter 13 Plan as a creditor receiving payments through the Trustee conduit.

43. The holder of the FFB Loan, FFB, was listed in the Chapter 13 Plan as a creditor receiving payments through the Trustee conduit.

44. The confirmed Chapter 13 Plan provided a nonstandard provision that stated:

> For all creditors receiving payments through the Trustee conduit (Trustee pay), the following plan provision shall apply: This Chapter 13 Plan along with the Confirmation Order is a modification of the original contracted payment terms with the Debtor(s) as set forth herein and allowed under bankruptcy law. The payment due days, application of payments, assessment of late fees and attorney fees, and balances owed are hereby controlled by the terms described in this Chapter 13 Plan. See (In re Diana Lynn Harvey, 213 F.3d 318 7th Cir. 2000). This modified contract, created by the confirmed Chapter 13 Plan and Confirmation Order, shall only be subject to modification of the Chapter 13 Plan under 11 U.S.C. § 1329. This section is not applicable to direct pay creditors not paid through the Trustee conduit.

45. The nonstandard provision in the confirmed Chapter 13 Plan creates an obligation for creditors who choose to credit report to do so in conformity with the modified contract created by the Chapter 13 Plan.

46. This means that creditors who credit report must report the balance of the account within the Bankruptcy, along with the scheduled payment, recent payment, payments previously made, and the current status of those payments.

47. Despite the Chapter 13 Plan, the FFB Loan and Mariner Loan were each reported without a balance or payment information on Plaintiff's TU, Experian, and Equifax credit reports.

48. Plaintiff's creditors and potential creditors have accessed Plaintiff's credit reports while the misreporting described herein was on Plaintiff's credit reports and were misinformed by Defendants about Plaintiff's credit worthiness.

***TU, Mariner, and FFB's Inaccurate, Incomplete, and/or Materially Misleading Reporting***

49. Upon information and belief, on or before April 9, 2025, TU was publishing information about Plaintiff's Mariner Loan and FFB Loan on Plaintiff's TU consumer report (the "TU Report").

50. Upon information and belief, in the TU Report, TU and Mariner were reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Mariner Loan.

51. Upon information and belief, in the TU Report, TU and FFB were reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the FFB Loan.

52. Upon information and belief, the Mariner Loan was reported on the TU Report with no balance, no amount paid, no payment history, and no payment status information.

53. Upon information and belief, the FFB Loan was reported on the TU Report with no balance, no amount paid, no payment history, and no payment status information.

54. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Mariner Loan, TU and Mariner were incorrectly making it appear as if the Mariner Loan was currently negative and/or closed.

55. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the FFB Loan, TU and FFB were incorrectly making it appear as if the Mariner Loan was currently negative and/or closed.

56. TU, Mariner, and FFB's respective reporting was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiff pays upon.

57. It is inaccurate, incomplete, and/or materially misleading for TU and Mariner to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

58. It is inaccurate, incomplete, and/or materially misleading for TU and FFB to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

59. However, TU and Mariner either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Mariner Loan as discussed herein.

60. TU and FFB also either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the FFB Loan as discussed herein.

***Experian, Mariner, and FFB's Inaccurate, Incomplete, and/or Materially Misleading Reporting***

61. Upon information and belief, on or before April 9, 2025, Experian was publishing information about Plaintiff's Mariner Loan and FFB Loan on Plaintiff's Experian consumer report (the "Experian Report").

62. Upon information and belief, in the Experian Report, Experian and Mariner were reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Mariner Loan.

63. Upon information and belief, in the Experian Report, Experian and FFB were reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the FFB Loan.

64. Upon information and belief, the Mariner Loan was reported on the Experian Report with no balance, no amount paid, no payment history, and no payment status information.

65. Upon information and belief, the FFB Loan was reported on the Experian Report with no balance, no amount paid, no payment history, and no payment status information.

66. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Mariner Loan, Experian and Mariner were incorrectly making it appear as if the Mariner Loan was currently negative and/or closed.

67. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the FFB Loan, Experian and FFB were incorrectly making it appear as if the Mariner Loan was currently negative and/or closed.

68. Experian, Mariner, and FFB's respective reporting was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiff pays upon.

69. It is inaccurate, incomplete, and/or materially misleading for Experian and Mariner to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

70. It is inaccurate, incomplete, and/or materially misleading for Experian and FFB to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

71. However, Experian and Mariner either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Mariner Loan as discussed herein.

72. Experian and FFB also either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the FFB Loan as discussed herein.

### *Equifax, Mariner, and FFB's Inaccurate, Incomplete, and/or Materially Misleading Reporting*

73. Upon information and belief, on or before April 9, 2025, Equifax was publishing information about Plaintiff's Mariner Loan and FFB Loan on Plaintiff's Equifax consumer report (the "Equifax Report").

74. Upon information and belief, in the Equifax Report, Equifax and Mariner were reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Mariner Loan.

75. Upon information and belief, in the Equifax Report, Equifax and FFB were reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the FFB Loan.

76. Upon information and belief, the Mariner Loan was reported on the Equifax Report with no balance, no amount paid, no payment history, and no payment status information.

77. Upon information and belief, the FFB Loan was reported on the Equifax Report with no balance, no amount paid, no payment history, and no payment status information.

78. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Mariner Loan, Equifax and Mariner were incorrectly making it appear as if the Mariner Loan was currently negative and/or closed.

79. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the FFB Loan, Equifax and FFB were incorrectly making it appear as if the Mariner Loan was currently negative and/or closed.

80. Equifax, Mariner, and FFB's respective reporting was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiff pays upon.

81. It is inaccurate, incomplete, and/or materially misleading for Equifax and Mariner to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

82. It is inaccurate, incomplete, and/or materially misleading for Equifax and FFB to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy Court.

83. However, Equifax and Mariner either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Mariner Loan as discussed herein.

84. Equifax and FFB also either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the FFB Loan as discussed herein.

***Plaintiff's Dispute to TU***

85. On or after April 9, 2025, Plaintiff disputed TU's reporting of the Mariner Loan and the FFB Loan pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect credit information in his consumer report.

86. Plaintiff sent a letter to TU requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Mariner Loan and FFB Loan (the "TU Dispute").

87. Specifically, Plaintiff explained that the both the Mariner Loan and the FFB Loan were paid through the Chapter 13 Trustee.

88. Plaintiff requested that TU and Mariner identify Plaintiff's current balance and the ongoing payments Plaintiff was making on the Mariner Loan.

89. Plaintiff also requested that TU and FFB identify Plaintiff's current balance and the ongoing payments Plaintiff was making on the FFB Loan.

90. Plaintiff attached supporting documents to the TU Dispute, including Plaintiff's Chapter 13 Plan and a copy of the Chapter 13 confirmation order.

91. Upon information and belief, TU received the TU Dispute.

92. Upon receipt of the TU Dispute, TU was required to conduct a reinvestigation into the Mariner Loan and FFB Loan on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

93. Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Mariner of Plaintiff's TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's TU Dispute for Mariner to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

94. Pursuant to 15 U.S.C. § 1681i, TU also had a duty to notify FFB of Plaintiff's TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's TU Dispute for FFB to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

95. Upon information and belief, TU notified Mariner of the TU Dispute and provided Mariner with the TU Dispute.

96. Upon information and belief, TU notified FFB of the TU Dispute and provided FFB with the TU Dispute.

97. Pursuant to 15 U.S.C. § 1681s-2(b), Mariner had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

98. Pursuant to 15 U.S.C. § 1681s-2(b), FFB had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

99. A reasonable reinvestigation by TU would have indicated that it was reporting the Mariner Loan inaccurately, incompletely, and/or in a materially misleading way.

100. A reasonable investigation by Mariner would have indicated that it was reporting the Mariner Loan inaccurately, incompletely, and/or in a materially misleading way.

101. A reasonable reinvestigation by TU would have indicated that it was reporting the FFB Loan inaccurately, incompletely, and/or in a materially misleading way.

102. A reasonable investigation by FFB would have indicated that it was reporting the FFB Loan inaccurately, incompletely, and/or in a materially misleading way.

103. After receipt of the TU Dispute, TU and Mariner continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Mariner Loan on Plaintiff's TU report.

104. After receipt of the TU Dispute, TU and FFB also continued to report the inaccurate, incomplete, and/or materially misleading information regarding the FFB Loan on Plaintiff's TU report.

***Plaintiff's Dispute to Experian***

105. On or after April 9, 2025, Plaintiff disputed Experian's reporting of the Mariner Loan and the FFB Loan pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect credit information in his consumer report.

106. Plaintiff sent a letter to Experian requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Mariner Loan and FFB Loan (the "Experian Dispute").

107. Specifically, Plaintiff explained that the both the Mariner Loan and the FFB Loan were paid through the Chapter 13 Trustee.

108. Plaintiff requested that Experian and Mariner identify Plaintiff's current balance and the ongoing payments Plaintiff was making on the Mariner Loan.

109. Plaintiff also requested that Experian and FFB identify Plaintiff's current balance and the ongoing payments Plaintiff was making on the FFB Loan.

110. Plaintiff attached supporting documents to the Experian Dispute, including Plaintiff's Chapter 13 Plan and a copy of the Chapter 13 confirmation order.

111. Upon information and belief, Experian received the Experian Dispute.

112. Upon receipt of the Experian Dispute, Experian was required to conduct a reinvestigation into the Mariner Loan and FFB Loan on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

113. Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Mariner of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for Mariner to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

114. Pursuant to 15 U.S.C. § 1681i, Experian also had a duty to notify FFB of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for FFB to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

115. Upon information and belief, Experian notified Mariner of the Experian Dispute and provided Mariner with the Experian Dispute.

116. Upon information and belief, Experian notified FFB of the Experian Dispute and provided FFB with the Experian Dispute.

117. Pursuant to 15 U.S.C. § 1681s-2(b), Mariner had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

118. Pursuant to 15 U.S.C. § 1681s-2(b), FFB had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

119. A reasonable reinvestigation by Experian would have indicated that it was reporting the Mariner Loan inaccurately, incompletely, and/or in a materially misleading way.

120. A reasonable investigation by Mariner would have indicated that it was reporting the Mariner Loan inaccurately, incompletely, and/or in a materially misleading way.

121. A reasonable reinvestigation by Experian would have indicated that it was reporting the FFB Loan inaccurately, incompletely, and/or in a materially misleading way.

122. A reasonable investigation by FFB would have indicated that it was reporting the FFB Loan inaccurately, incompletely, and/or in a materially misleading way.

123. After receipt of the Experian Dispute, Experian and Mariner continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Mariner Loan on Plaintiff's Experian report.

124. After receipt of the Experian Dispute, Experian and FFB also continued to report the inaccurate, incomplete, and/or materially misleading information regarding the FFB Loan on Plaintiff's Experian report.

***Plaintiff's Dispute to Equifax***

125. On or after April 9, 2025, Plaintiff disputed Equifax's reporting of the Mariner Loan and the FFB Loan pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect credit information in his consumer report.

126. Plaintiff sent a letter to Equifax requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Mariner Loan and FFB Loan (the "Equifax Dispute").

127. Specifically, Plaintiff explained that the both the Mariner Loan and the FFB Loan were paid through the Chapter 13 Trustee.

128. Plaintiff requested that Equifax and Mariner identify Plaintiff's current balance and the ongoing payments Plaintiff was making on the Mariner Loan.

129. Plaintiff also requested that Equifax and FFB identify Plaintiff's current balance and the ongoing payments Plaintiff was making on the FFB Loan.

130. Plaintiff attached supporting documents to the Equifax Dispute, including Plaintiff's Chapter 13 Plan and a copy of the Chapter 13 confirmation order.

131. Upon information and belief, Equifax received the Equifax Dispute.

132. Upon receipt of the Equifax Dispute, Equifax was required to conduct a reinvestigation into the Mariner Loan and FFB Loan on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

133. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Mariner of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for Mariner to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

134. Pursuant to 15 U.S.C. § 1681i, Equifax also had a duty to notify FFB of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for FFB to review, to conduct a

reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer file.

135. Upon information and belief, Equifax notified Mariner of the Equifax Dispute and provided Mariner with the Equifax Dispute.

136. Upon information and belief, Equifax notified FFB of the Equifax Dispute and provided FFB with the Equifax Dispute.

137. Pursuant to 15 U.S.C. § 1681s-2(b), Mariner had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

138. Pursuant to 15 U.S.C. § 1681s-2(b), FFB had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

139. A reasonable reinvestigation by Equifax would have indicated that it was reporting the Mariner Loan inaccurately, incompletely, and/or in a materially misleading way.

140. A reasonable investigation by Mariner would have indicated that it was reporting the Mariner Loan inaccurately, incompletely, and/or in a materially misleading way.

141. A reasonable reinvestigation by Equifax would have indicated that it was reporting the FFB Loan inaccurately, incompletely, and/or in a materially misleading way.

142. A reasonable investigation by FFB would have indicated that it was reporting the FFB Loan inaccurately, incompletely, and/or in a materially misleading way.

143. After receipt of the Equifax Dispute, Equifax and Mariner continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Mariner Loan on Plaintiff's Equifax report.

144. After receipt of the Equifax Dispute, Equifax and FFB also continued to report the inaccurate, incomplete, and/or materially misleading information regarding the FFB Loan on Plaintiff's Equifax report.

***TU, Mariner, and FFB's Continued Inaccurate, Incomplete, and/or Materially Misleading Reporting after the TU Dispute***

145. In response to Plaintiff's TU Dispute, TU sent back investigation results dated May 7, 2025 (the "TU Investigation Results").

146. On the TU Investigation Results, TU and Mariner continued to report the tradeline for the Mariner Loan in an inaccurate, incomplete, and/or materially misleading way.

147. Additionally, on the TU Investigation Results, TU and FFB continued to report the tradeline for the FFB Loan in an inaccurate, incomplete, and/or materially misleading way.

148. On the TU Investigation Results, TU and Mariner reported the Mariner Loan with: no balance, monthly payment amount, no payment history after the date of filing the Bankruptcy, and no payment status information.

149. On the TU Investigation Results, TU and FFB also reported the FFB Loan with: no balance, monthly payment amount, no payment history after the date of filing the Bankruptcy, and no payment status information.

150. TU and Mariner's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Mariner Loan was negative, that no current balance or monthly payment was owed, and that Plaintiff had not made any payments since Plaintiff's Bankruptcy was filed.

151. TU and FFB's reporting was also inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the FFB Loan was negative, that no current balance or monthly payment was owed, and that Plaintiff had not made any payments since Plaintiff's Bankruptcy was filed.

152. TU and Mariner's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the Mariner Loan was problematic because the TU Dispute included relevant supporting documents that TU and Mariner chose to ignore.

153. TU and FFB's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the FFB Loan was also problematic because the TU Dispute included relevant supporting documents that TU and FFB chose to ignore.

154. On a TU credit report dated July 14, 2025, the inaccurate, incomplete, and/or materially misleading reporting on the Mariner Loan and FFB Loan described above remained.

155. On the TU credit report dated July 14, 2025, the Mariner Loan and FFB Loan were both contained in a section titled "Accounts with Adverse Information", despite the fact that no other derogatory information appeared on the accounts except for the bankruptcy remarks.

***Experian, Mariner, and FFB's Continued Inaccurate, Incomplete, and/or Materially Misleading Reporting after the Experian Dispute***

156. Following Experian, Mariner, and FFB's respective investigations into the Experian Dispute, Plaintiff does not have record of receiving investigation results from Experian.

157. Nonetheless, upon information and belief, after the Experian Dispute, Experian and Mariner continued to report the tradeline for the Mariner Loan in an inaccurate, incomplete, and/or materially misleading way.

158. Additionally, upon information and belief, after the Experian Dispute, Experian and FFB continued to report the tradeline for the FFB Loan in an inaccurate, incomplete, and/or materially misleading way.

159. Upon information and belief, Experian and Mariner reported the Mariner Loan with: no balance, monthly payment amount, no payment history after the date of filing the Bankruptcy, and no payment status information.

160. Upon information and belief, Experian and FFB also reported the FFB Loan with: no balance, monthly payment amount, no payment history after the date of filing the Bankruptcy, and no payment status information.

161. Upon information and belief, Experian and Mariner's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Mariner Loan was negative, that no current balance or monthly payment was owed, and that Plaintiff had not made any payments since Plaintiff's Bankruptcy was filed.

162. Upon information and belief, Experian and FFB's reporting was also inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the FFB Loan was negative, that no current balance or monthly payment was owed, and that Plaintiff had not made any payments since Plaintiff's Bankruptcy was filed.

163. Experian and Mariner's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the Mariner Loan was problematic because the Experian Dispute included relevant supporting documents that Experian and Mariner chose to ignore.

164. Experian and FFB's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the FFB Loan was also problematic because the Experian Dispute included relevant supporting documents that Experian and FFB chose to ignore.

165. On an Experian credit report dated July 14, 2025, the inaccurate, incomplete, and/or materially misleading reporting on the Mariner Loan and FFB Loan described above remained.

***Equifax, Mariner, and FFB's Continued Inaccurate, Incomplete, and/or Materially Misleading Reporting after the Equifax Dispute***

166. In response to Plaintiff's Equifax Dispute, Equifax sent back dispute results dated April 18, 2025 (the "Equifax Dispute Results").

167. On the Equifax Dispute Results, Equifax and Mariner continued to report the tradeline for the Mariner Loan in an inaccurate, incomplete, and/or materially misleading way.

168. Additionally, on the Equifax Dispute Results, Equifax and FFB continued to report the tradeline for the FFB Loan in an inaccurate, incomplete, and/or materially misleading way.

169. On the Equifax Dispute Results, Equifax and Mariner reported the Mariner Loan with: no balance, monthly payment amount, no payment history after the date of filing the Bankruptcy, and no payment status information.

170. On the Equifax Dispute Results, Equifax and FFB also reported the FFB Loan with: no balance, monthly payment amount, no payment history after the date of filing the Bankruptcy, and no payment status information.

171. Equifax and Mariner's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Mariner Loan was negative, that no current balance or monthly payment was owed, and that Plaintiff had not

made any payments since Plaintiff's Bankruptcy was filed.

172. Equifax and FFB's reporting was also inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the FFB Loan was negative, that no current balance or monthly payment was owed, and that Plaintiff had not made any payments since Plaintiff's Bankruptcy was filed.

173. Equifax and Mariner's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the Mariner Loan was problematic because the Equifax Dispute included relevant supporting documents that Equifax and Mariner chose to ignore.

174. Equifax and FFB's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the FFB Loan was also problematic because the Equifax Dispute included relevant supporting documents that Equifax and FFB chose to ignore.

175. On an Equifax credit report dated July 14, 2025, the inaccurate, incomplete, and/or materially misleading reporting on the Mariner Loan and FFB Loan described above remained.

176. On the July 14, 2025, Equifax credit report, the Mariner Loan and FFB Loan were also incorrectly reporting as "Closed", giving the materially misleading impression that the data was set on the accounts, and that Plaintiff had not and was not making payment on either account.

***The Impact of Inaccurate or Misleading Information on Consumer Reports***

177. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

i. credit or insurance to be used primarily for personal, family, or household purposes;

ii. employment purposes; or

iii. any other purpose authorized under section 1681b.

178. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

179. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

180. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

***Credit Scoring***

181. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/.

182. Defendants' inaccurate and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

183. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

184. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

185. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

186. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

187. Inaccurate, incomplete, and/or materially misleading credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

188. Here, the inaccurate, incomplete, and/or materially misleading reporting of the FFB Loan and the Mariner Loan adversely affects Plaintiff's FICO score as Plaintiff's credit reports make it appear as though each account is negative and/or closed and that Plaintiff has not been paying on either the FFB Loan or the Mariner Loan at all.

189. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

190. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

***Defendants' Violations of the FCRA and Plaintiff's Damages***

191. It is inaccurate, incomplete, and/or materially misleading to report an account does not have a balance when it does in fact have a balance a consumer is paying down.

192. It is inaccurate, incomplete, and/or materially misleading to report an account does not have a monthly payment made upon it when the consumer is in fact making payments on the account.

193. It is inaccurate, incomplete, and/or materially misleading to suppress positive and accurate account balance and payment data.

194. As evidenced by TU's failure to report accurate information on the Mariner Loan and FFB Loan—despite having notice of relevant bankruptcy documents and current status of the Mariner Loan and FFB Loan—TU failed to follow reasonable procedures to assure maximum

possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

195. TU either ignored or failed to review all relevant information on the Mariner Loan and FFB Loan and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

196. As evidenced by Experian's failure to report accurate information on the Mariner Loan and FFB Loan—despite having notice of relevant bankruptcy documents and current status of the Mariner Loan and FFB Loan—Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

197. Experian either ignored or failed to review all relevant information on the Mariner Loan and FFB Loan and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

198. As evidenced by Equifax's failure to report accurate information on the Mariner Loan and FFB Loan—despite having notice of relevant bankruptcy documents and current status of the Mariner Loan and FFB Loan—Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

199. Equifax either ignored or failed to review all relevant information on the Mariner Loan and FFB Loan and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

200. Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff sent Defendants written disputes identifying the inaccurate,

incomplete, and/or materially misleading information related to the Mariner Loan and FFB Loan, Defendants, upon receipt of Plaintiff's disputes, failed to conduct a reasonable reinvestigation and/or investigation with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

201. Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

202. Due to Defendants' failure to reasonably reinvestigate and/or investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

203. By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. § 1681s-2(b).

204. Defendants' inaccurate, incomplete, and/or materially misleading reporting on tradelines for the Mariner Loan and FFB Loan—in light of their knowledge of the positive data they could report on the Mariner Loan and FFB Loan—was willful. Plaintiff is, accordingly, eligible for statutory damages.

205. Moreover, and in the alternative, the active suppression of positive account data that only serves to harm Plaintiff is a further indication that TU, Experian, and Equifax acted willfully.

206. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). See *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

207. Based upon Defendants' knowledge of the Mariner Loan and FFB Loan and the respective data they possessed on the Mariner Loan and FFB Loan, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

208. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, humiliation, frustration, and emotional distress.

209. Upon information and belief, Plaintiff's Experian, Equifax, and TU credit reports were published to third parties while the inaccurate, incomplete, and/or materially misleading information on the FFB Loan and Mariner Loan was reporting.

210. Instead of those third parties seeing the FFB Loan and Mariner Loan as positive accounts that Plaintiff is paying down, the FFB Loan and Mariner Loan instead appeared as negative accounts without any payment data. This inaccurate, incomplete, and/or materially misleading information was published to those third parties.

211. Defendants thus caused a Plaintiff to have a reputational harm akin to defamation.

212. While the inaccurate, incomplete, and/or materially misleading reporting was on Plaintiff's credit reports, Plaintiff was denied a lease and incurred a pecuniary loss of Plaintiff's application fee, even though Plaintiff had an on time payment rental history, and which

required Plaintiff to enter into a more expensive multiyear lease with Plaintiff's current landlord.

213. While the inaccurate, incomplete, and/or materially misleading reporting was on Plaintiff's credit reports, Plaintiff was denied a mortgage for a VA loan.

214. The lease and mortgage denials were and are extremely stressful for Plaintiff as Plaintiff is on a fixed military disability and pension, and Plaintiffs' current rent is using funds needed for basic necessities.

215. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the Mariner Loan and FFB Loan appeared on Plaintiff's credit reports, Plaintiff was denied credit offered while shopping at Kohls.

216. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the Mariner Loan and FFB Loan appeared on Plaintiff's credit reports, Plaintiff was denied credit from Capital One, among other lenders.

217. While the inaccurate, incomplete, and/or materially misleading information concerning the Mariner Loan and FFB Loan appeared on Plaintiff's credit reports, after Plaintiff received credit denials, Plaintiff has avoided seeking credit for fear of being denied and further hurting his credit score.

218. Plaintiff has made all payments on time on the Mariner Loan and FFB Loan in accordance with his Bankruptcy Plan and made a commitment to pay his other debts as agreed in the Bankruptcy in the hope of obtaining a fresh start and better credit, but now Plaintiff worries the inaccurate, incomplete, and/or materially misleading information concerning the Mariner Loan and FFB Loan will prevent that from occurring.

219. Defendants' reporting and the dissemination of inaccurate, incomplete, and/or materially misleading account information to third parties has caused Plaintiff to feel drained, shame, and thoughts of uselessness.

220. Defendants' inaccurate, incomplete, and/or materially misleading reporting on the Mariner Loan and FFB Loan after Plaintiff clearly requested a correction has caused Plaintiff to suffer racing thoughts and sleepless nights and has aggravated Plaintiff's depression and shoulder and back pain from a prior injury.

221. Defendants' inaccurate, incomplete, and/or materially misleading reporting on the Mariner Loan and FFB Loan after Plaintiff requested a correction has caused Plaintiff stress and irritation at Defendants' unwillingness to report accurately, as Plaintiff has never missed a payment on the Mariner Loan and FFB Loan.

222. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to expend time in Plaintiff's attempts to get Defendants to correct the reporting.

223. By reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have caused in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

224. Creating the false impression that the Mariner Loan and FFB Loan wear each recently negative instead of recently positive creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports that is engaged in judgment-based lending.

## FIRST CAUSE OF ACTION
## FCRA – 15 U.S.C. § 1681 *et seq.*

225. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

226. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to TU, Experian, and Equifax.

227. Defendants TU, Experian, and Equifax's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

228. Defendants Mariner and FFB's acts and omissions were in violation of 15 U.S.C. § 1681s-2(b).

229. The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

230. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

231. In the alternative, Defendants were negligent in their actions, which entitled Plaintiff to recover under 15 U.S.C. § 1681o.

232. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

**REQUEST FOR A JURY TRIAL**

233. Plaintiff is entitled to, and demands, a trial by jury.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;
2. Plaintiff's actual damages from each Defendant;
3. Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;
4. Punitive damages from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);
5. An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and
6. Any other relief the Court may deem just and proper.

Dated: September 3, 2025

Respectfully Submitted,

By: */s/Richard J. Shea*
Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC
4701 N. Keystone Avenue, Suite 210
Indianapolis, IN 46205
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com
*Attorney for Plaintiff*